32 F.3d 569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph BAZE, Defendant-Appellant.
 No. 93-6369.
 United States Court of Appeals, Sixth Circuit.
 Aug. 2, 1994.
 
 Before: MARTIN, SUHRHEINRICH, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Ralph Baze, was convicted on three counts of being a felon in possession of a firearm, in violation of 18 U.S.C. Sec. 922(g). He was sentenced to 120 months on each count, the second and third to run concurrently, for a total of 240 months. On direct appeal to this court, the defendant contends: (1) that the three counts were multiplicitous, in that he possessed all three weapons simultaneously and acquired two of them at the same time; (2) that the prosecution made reference during opening statement to a "manhunt" for defendant Baze and improperly alluded to outside information which, the prosecutor insinuated, would be highly prejudicial to the defendant; (3) that the prosecution failed to include on its pretrial exhibit list a photograph later introduced at trial; (4) that the jury should have been charged on justification as a defense, because the defendant's possession of at least one of the weapons arose out of a "family feud" situation; (5) that because of two pending state murder charges against him, involving the weapons that were the subject of the three-count indictment in this case, he was faced with a Solomon's choice as to whether to testify at sentencing in this case and risk self-incrimination as to the pending murder charges, which effectively violated his Fifth Amendment privilege against self-incrimination; and (6) that his sentence was improperly enhanced on the basis of these outstanding state murder charges. For the reasons given below, we conclude that conviction on both count 2 and count 3 was improper, and we therefore reverse as to count 3. However, we find no error with regard to the defendant's conviction and sentence on the other two counts, and we therefore affirm the district court's judgment on counts 1 and 2.
 
 
 2
 The proof suggests that the tragic events in this case had their genesis in a running feud between the defendant and some of his relatives. Without going into great factual detail, it appears that Baze and his immediate family had been harassed and threatened on numerous occasions and that he had been shot at several times--some 20 or 30 times according to his testimony. He introduced evidence that he had repeatedly complained about this situation to local law enforcement officials and had appeared before the county grand jury seeking to press charges, all without success. As a result, he said, he left his home in Kentucky and went to Michigan on January 23, 1992, and there purchased a rifle and ammunition, for self-protection, and a truck, in which he planned to move his family to Florida to safety.
 
 
 3
 A week later, on January 30, 1992, the county sheriff's deputy, Arthur Briscoe, came to defendant Baze's home to execute a state arrest warrant from Ohio. Baze's wife told Briscoe that Baze was not at home, but a check with a neighbor turned up evidence that Baze had evaded arrest by leaving from the rear of the house. Based on this information, Briscoe returned to the house and encountered Baze on the back porch, armed with a high-powered rifle. During the ensuing conversation, Briscoe learned that Baze was not inclined to surrender, blaming the arrest on the ongoing feud between him and his relatives. Briscoe thought better of shooting it out with the defendant and left as Baze was walking toward the woods behind the house.
 
 
 4
 Briscoe drove away from the scene and radioed for help. Soon, Sheriff Steve Bennett joined Briscoe and the two drove back to Baze's house. During the interim, Baze had returned to the house and retrieved a blue duffel bag containing ammunition for his rifle. The events that then ensued were largely disputed at trial.
 
 
 5
 Baze contended that he had decided to surrender, had laid down his rifle, and was attempting to approach the officers in order to surrender when Briscoe opened fire on him, wounding him in the leg. He claimed that he grabbed his rifle in self-defense and returned the fire, initially hitting Sheriff Bennett in the back. The defendant said that he then approached the patrol car, firing at the concealed Briscoe, who was crouched behind the cruiser, firing back blindly. According to the defendant, Briscoe jumped up to run and Baze shot him in the back. Baze said that as he walked toward the prone deputy, he saw Briscoe's hand flinch toward his pistol and therefore shot him in the back of the head.
 
 
 6
 The government's theory was that the defendant had ambushed the sheriff and his deputy when they returned to the scene. Bennett's gun had not been fired when he was killed. Apparently, he had been shot as he was trying to get back into the car.
 
 
 7
 After killing the two officers, Baze picked up their pistols and fled on foot for several miles. Some hours later, he knocked on the door of a man named Monte Parks. Parks had learned of the search going on in the area for Baze and refused to open the door. Parks notified authorities that Baze was at his door, and the deputy sheriff who responded to this call arrested the defendant without incident. Baze had in his possession his rifle and the two police revolvers.
 
 
 8
 Later investigation indicated that Baze had two 1987 felony convictions for receiving stolen property in two different counties, laying the predicate for the federal felon-in-possession charges, which were filed in addition to the state murder charges. After Baze's conviction in federal court on the weapons charges, he was convicted on two counts of capital murder and is presently incarcerated on Kentucky's "death row" while appealing the state convictions.
 
 
 9
 Although it will not affect his sentence, we find merit to the defendant's contention that merely merging the two counts charging possession of the police pistols for purposes of sentencing was not sufficient. As the United States Supreme Court has noted, a separate conviction, apart from the concurrent sentence, has potential adverse consequences. Ball v. United States, 470 U.S. 856, 865 (1985). See also United States v. Berry, 977 F.2d 915 (5th Cir.1992) (applying Ball in the Sec. 922(g) context).
 
 
 10
 The simultaneous possession of more than one firearm, as here, constitutes a single offense under 18 U.S.C. Sec. 922(g), unless there is evidence that the weapons were acquired or stored at different times or places. United States v. Killebrew, 560 F.2d 729 (6th Cir.1977). The defendant argues that there is insufficient evidence of separate acquisition in this case and that the separate acquisition issue must be the subject of a special jury verdict.
 
 
 11
 We agree that evidence of separate acquisition is lacking as to counts 2 and 3, involving the pistols picked up after the murder of Bennett and Briscoe. This deficiency in the judgment can be cured simply by vacating and dismissing the third count of the indictment.
 
 
 12
 We have no difficulty, however, in upholding discrete convictions on counts 1 and 2. Even though the circumstances surrounding the defendant's acquisition of the pistols was ruled inadmissible and kept from the jury at the defendant's request, there was more than adequate proof to indicate that Baze came into possession of the rifle by purchasing it, alone, in Michigan on January 23, 1992, a week before his encounter with police. Despite their ignorance about the source of the pistols, the jury was entitled to draw the conclusion from circumstantial evidence that the rifle and the pistols were separately acquired.
 
 
 13
 Concerning the necessity of a special verdict on the issue of separate acquisition, the defendant relies on a recent Ninth Circuit decision holding that a defendant may not be convicted of multiple counts of possession of a firearm based upon possession of several weapons on the same date, absent a finding of fact by the jury that there was separate acquisition or possession. United States v. Szalkiewicz, 944 F.2d 653, 654 (9th Cir.1991). As noted by the defendant, the Szalkiewicz court cited decisions by other courts requiring special jury verdicts on the issue of separate possession or acquisition, including United States v. Valentine, 706 F.2d 282, 294 (10th Cir.1983) (overturning multiplicitous convictions where the jury did not find separate possession or acquisition, despite uncontroverted evidence indicating that the weapons in question were delivered separately).
 
 
 14
 The government responds, forcefully, that the question of multiplicity is one for judicial resolution and should be held to be beyond the province of the jury. Historically, of course, it has been the exclusive province of the court to review the facts of two cases to determine whether or not a violation of the double jeopardy clause has occurred. See, e.g., Grady v. Corbin, 495 U.S. 508 (1990) (reversed on other grounds); United States v. Easley, 942 F.2d 405 (6th Cir.1991).
 
 
 15
 The government also contends that the defendant has waived any claim that a separate jury finding was required in this case by failing to request a separate jury instruction on the issue of acquisition. This argument is supported by United States v. Bonavia, 927 F.2d 565 (11th Cir.1991) (defendant's failure to request separate jury finding on acquisition constituted waiver of issue; appellate court itself reviewed record for evidence of separate acquisition). See also United States v. Thomas, 875 F.2d 559 (6th Cir.), cert. denied, 493 U.S. 867 (1989); In re Grand Jury Proceedings, 797 F.2d 1377, 1380 (6th Cir.1986), cert. denied, 479 U.S. 1031 (1987).
 
 
 16
 We agree that the issue has been waived in this case. Moreover, under the peculiar procedural facts of this prosecution, we conclude that an accurate determination by the jury on the question of acquisition could not have been made, because of the defendant's successful motion in limine to exclude all evidence of how he came into possession of the police pistols that formed the basis of the charges in counts 2 and 3. Hence, even if we were persuaded to adopt the rule in Szalkiewicz, this would not be the appropriate case in which to apply it. We therefore hold that the evidence was sufficient to convict the defendant on both count 1 and count 2 and that any necessity of a special jury finding on the question of separate acquisition has been waived in this case.
 
 
 17
 The circumstances of Baze's acquisition of the pistols threatened to creep into the trial indirectly, when the prosecutor mentioned in his opening statement to the jury that "there was a search for Ralph Baze" being conducted by police at the time of his arrest for reasons "irrelevant to this trial" and that he was arrested as the result of the authorities' "respon[se] to an alert that Ralph Baze had been spotted ... at the home of one Monte Parks, who had called [police]." The defendant moved for a mistrial, based on these comments, but the motion was denied by the district court, in the exercise of its discretion.
 
 
 18
 We find no reversible error. The statement carried its own disclaimer of relevance, it was made at a time well before jury deliberation, and no further comments of this nature occurred during trial. While we do not find the prosecution's conduct to be as innocuous as the government now claims, we cannot say that the district judge abused his discretion in declining to declare a mistrial.
 
 
 19
 Nor do we find reversible error in connection with the government's use of a photograph at trial that had not been supplied to defense counsel during pretrial discovery. The photograph was one of the defendant that had been shown to the Michigan gun dealer from whom Baze purchased his rifle, for the purpose of identification. Under well-settled law in this circuit, the district court retains broad discretion in determining whether to admit undisclosed evidence, a decision which turns on several factors: the reasons for the nondisclosure, the extent of prejudice to the defendant, the possibility of ameliorating any such prejudice by a continuance, and any other relevant circumstances. United States v. Kenan, 803 F.2d 722 (6th Cir.), cert denied, 459 U.S. 1170 (1983).
 
 
 20
 Here, there is no evidence that the government acted deliberately or in bad faith. The defense had an opportunity to cross-examine the witness regarding the photograph and her identification of the defendant. There is no evidence that the defendant was unfairly prejudiced by introduction of the photograph, and we decline to reverse the conviction on this basis.
 
 
 21
 Next, the defendant argues that he was entitled to a jury instruction on the defense of justification in connection with his possession of the rifle, based on his contention that he needed the gun for reasons of self-defense. He points, as support, to our decision in United States v. Singleton, 902 F.2d 471 (6th Cir.), cert. denied, 498 U.S. 872 (1990), in which we held that a defense of justification may arise in rare situations involving defendants charged under Sec. 922(g).
 
 
 22
 The Singleton decision sets out five factors that must be present to warrant an instruction on justification as a defense to a charge of illegal possession of a weapon. The first, and perhaps the most fundamental, is a finding that the defendant was under an unlawful and "present, imminent and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury...." Id. at 472. While the intermittent threats aimed at the defendant and his family were apparently ongoing in nature, beginning in late July or early August 1991 and continuing up to the date that Baze purchased the rifle in January 1992, these were not the kind of immediate and imminent threats contemplated by Singleton. There is, for example, no evidence that officers would not have come to the defendant's aid had he reported that someone was shooting at him. The only conclusion supported by the record is that Baze had been unable to submit evidence of continued threats and harassment (and of the identity of the alleged perpetrators) sufficient to establish probable cause and allow authorities to take legal action against the offenders. On the basis of the facts in this record, we find that the requirements of Singleton were not met, and we conclude that the district court did not err in declining to instruct the jury on justification as a defense to the felon-in-possession charge against Baze.
 
 
 23
 The defendant's claim that his Fifth Amendment protection against self-incrimination was violated in this case must also fail. He contends that by testifying in his own behalf in this action, he could later be deemed to have waived the privilege against self-incrimination in the pending state murder prosection. We conclude that this claim, if valid at all, would have to be raised in the subsequent state murder trial, not in this federal prosecution. Certainly, his testimony in this case cannot be said to have been "compelled." Moreover, by testifying at trial, he waived any Fifth Amendment privilege in connection with the federal charges, absent proof of some other form of compulsion.
 
 
 24
 Finally, the defendant alleges that his sentence on counts 1 and 2 was improperly enhanced by cross-reference to the murder of Sheriff Bennett and of Deputy Sheriff Briscoe. Our review of the record indicates that the weapon involved in count 2 was not used by Baze in the murders and, in fact, was not cross-referenced, and that cross-referencing in connection with count 1 was proper. As the government notes, despite the use of cross-referencing, a defendant can never be given more than the maximum punishment for the offense for which he was convicted. In this case, that maximum is 10 years, which was the sentence imposed in each count in this case. See 18 U.S.C. Sec. 924. In any event, we have held that enhancement of a sentence based on acts proved only by a preponderance of the evidence does not violate due process, United States v. Silverman, 976 F.2d 1502 (6th Cir.1992), cert. denied, 113 S.Ct. 1595 (1993), and we therefore reject the defendant's constitutional challenge to the propriety of his sentence. It is indisputably clear from the record that the defendant was--more likely than not--guilty of the deliberate killing of the two officers, as a Kentucky state court has now found beyond a reasonable doubt.
 
 
 25
 For all the foregoing reasons, we AFFIRM the judgment of conviction and the sentence imposed as to count 1 and count 2 of the indictment. The judgment with respect to count 3 is REVERSED, and the charge in that count is hereby DISMISSED, with prejudice.